UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RUBEN VIDALES,                    )   Case No. CV 06-2113-OP
                                  )
                Plaintiff,        )
                                  )
        v.                        )   MEMORANDUM OPINION; ORDER
                                  )
JO ANNE B. BARNHART,[1]           )
Commissioner of Social Security,  )
                                  )
                Defendant.        )
_____ )

        On April 13, 2006, Plaintiff Ruben Vidales ("Plaintiff"), lodged for filing a

Complaint seeking review of the Commissioner's denial of his application for

Child's Supplemental Security Income ("SSI") benefits.

        On June 4, 2007, in accordance with the Court's Case Management Order,

the parties filed a Joint Stipulation ("JS").  Thus, this matter now is ready for

decision.[2]

_____

        [1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, the current
Commissioner of Social Security, is hereby substituted as the Defendant herein.

        [2]  As the Court advised the parties in its Case Management Order, the
decision in this case will be made on the basis of the pleadings, the administrative
record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c)

1

# I.

## BACKGROUND

On March 28, 2002, Plaintiff filed a claim for Child's SSI under Title XVI of the Social Security Act. (Administrative Record ("AR") at 50-54.) The Administration denied the application initially and again upon reconsideration. (AR at 40-43, 45-48.) Plaintiff then sought review before an Administrative Law Judge ("ALJ"). (AR at 49.) On March 30, 2004, the matter proceeded to a first hearing before an ALJ. (AR at 229-50.)

On April 20, 2004, the ALJ issued a decision denying Plaintiff's claim for benefits. (AR at 188-98.) Plaintiff requested review before the Commissioner's Appeals Council which granted the review, vacated the decision of the ALJ, and remanded the matter for further proceedings. (AR at 215-21.) On August 16, 2005, a second hearing was held before the ALJ. (AR at 251-90.)

As reflected in the September 6, 2005, hearing decision (AR at 17-25), the ALJ considered both whether Plaintiff was under a disability prior to age eighteen and, because Plaintiff attained age eighteen on July 23, 2004, whether he was disabled under the adult disability standards. (AR at 18.) Generally, the ALJ found that Plaintiff suffered from medically determinable impairments (*i.e.*, "asthma, borderline intellectual functioning and learning disorder in mathematics prior to age 18 and low average intellectual functioning since age 18"), which in combination were "severe," but that Plaintiff's impairments did not, singly or in combination, meet or equal the criteria of any of the impairments listed in 20 Code of Federal Regulations, section 404, Subpart P, Appendix 1 ("Listing of Impairments"). (AR at 24.) The ALJ also found that:

- Plaintiff's and his mother's subjective allegations were not fully

_____

of the Federal Rules of Civil Procedure, the Court will determine which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1    credible;

2    •    Prior to the age of eighteen, Plaintiff did not have an "extreme"

3         limitation in any domain of functioning, or a "marked"

4         limitation in two domains of functioning, and, therefore, "did

5         not functionally equal the severity of the listings;" and

6    •    As of the age of eighteen, Plaintiff retained the residual

7         functional capacity ("RFC") to perform medium work limited

8         by non-exertional limitations (avoidance of exposure to extreme

9         temperature, dust, chemicals and fumes, and "mild limitations

10        in understanding and remembering tasks, sustaining

11        concentration and persistence, socially interacting with the

12        general public and adapting to workplace changes").

13   (AR at 24-25.)  The ALJ therefore concluded that Plaintiff had not been under a

14   "disability" as defined in the Social Security Act at any time through the date of

15   the ALJ's decision and was not eligible for SSI.  (See AR at 24-25.)

16        On September 14, 2005, Plaintiff timely filed a request with the Appeals

17   Council for review of the ALJ's decision.  (AR at 12-13.)  On March 17, 2006, the

18   Appeals Council advised Plaintiff that the ALJ's decision would stand as the final

19   decision of the Commissioner.  (AR at 6-8.)

20        The timely filing of the current action followed.

21                                    **II.**

22                          **DISPUTED ISSUE**

23        As reflected in the Joint Stipulation, the disputed issue which Plaintiff is

24   raising as the grounds for reversal and/or remand is as follows:

25        Whether the ALJ properly considered that Plaintiff does not meet or

26        equal Listings 112.05D (under age eighteen) and/or 12.05C (after age

27        eighteen).

28   (JS at 4.)

3

1

## III.

2

## STANDARD OF REVIEW

3     Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

4 to determine whether the Commissioner's findings are supported by substantial

5 evidence and whether the proper legal standards were applied.  DeLorme v.

6 Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

7 than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402

8 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

9 Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

10 evidence is "such relevant evidence as a reasonable mind might accept as adequate

11 to support a conclusion."  Richardson, 402 U.S. at 401.  The Court must review the

12 record as a whole and consider adverse as well as supporting evidence.  Green v.

13 Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of

14 more than one rational interpretation, the Commissioner's decision must be upheld.

15 Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

16

## IV.

17

## DISCUSSION

18 **A.      The Standard for Disability Under the Listing of Impairments.**

19     The Listing of Impairments sets forth certain impairments which are

20 presumed to be of sufficient severity to prevent the performance of work.

21 20 C.F.R. § 404.1525(a).  If a claimant has an impairment which meets or equals a

22 listed impairment, disability is presumed, and benefits are awarded.  20 C.F.R.

23 § 404.1520(d); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1477

24 (9th Cir. 1989).

25 / / /

26 / / /

27 / / /

28 / / /

4

**B.**   **Listings 112.05 (Prior to Age Eighteen) and 12.05 (Over Age Eighteen)**
**Defining Mental Retardation.**

The introductory paragraphs[3] of Listings 112.05 and 12.05 both provide that a finding of disability pursuant to mental retardation must be characterized by i) a subaverage general intellectual functioning, and ii) deficits in adaptive functioning, iii) provided that one of the subcategories of severity is satisfied.  20 C.F.R. § 404, Subpart P, App. 1, Listings 12.05, 112.05.  Listing 112.05 is applicable to children under eighteen years of age and includes six possible subcategories for meeting severity.  Listing 12.05 is applicable to those over age eighteen and includes four possible subcategories for meeting severity.

**1.**   **Subaverage General Intellectual Functioning and Severity Under**
**Listings 112.05D and 12.05C**

For any given intelligence testing session where more than one score is derived from the test administered (*e.g.*, verbal, performance, and full scale IQ scores are provided in the Wechsler series), the lowest of the three scores is used. 20 C.F.R. § 404, Subpart P, App. 1, Listings 112.00D.9, 12.00D.6.c.  IQ scores obtained between the ages of seven and sixteen are considered valid for two years; those obtained at or after age sixteen are presumed a valid indication of the child's current status.  20 C.F.R. § 404, Subpart P, App. 1, Listing 112.00D.10.  The applicable subcategory in both Listings provides that the severity is met by "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

---

[3] In order to meet Listing 112.05 or 12.05, the impairment must first satisfy the diagnostic criteria in the introductory paragraph, i.e., the claimant must have significantly subaverage general intellectual functioning and deficits in adaptive functioning.  See, e.g., Social Security Acquiescence Ruling 03-1(7), 68 Fed. Reg. 74,279, 74,280 (Dec. 23, 2003) (the diagnostic description contained in the introductory paragraph Listing 112.05 is an integral part of the criteria for the Listing).

1   mental impairment imposing an additional and significant limitation of function."[4]

2   20 C.F.R. § 404, Subpart P, App. 1, Listings 12.05C, 112.05D.

3         In this case, Plaintiff underwent intellectual testing on two separate

4   occasions.[5]  On July 16, 2002, seven days before his sixteenth birthday, Plaintiff

5   was tested by Dr. Townsend who reported a Verbal score of 78, a Performance

6   score of 65, and a Full Scale score of 70, and concluded that Plaintiff's intellectual

7   functioning was in the borderline range.  (AR at 127, 129.)  Dr. Townsend

8   described the results of the test as valid (AR at 128), and the ALJ did not make any

9   finding to the contrary in his first or his current decision.  (See AR at 23, 194.)

10        The Court considers the first testing as having been done *between* the ages of

11  seven and sixteen (and declines to construe it to be *at* the age of sixteen as Plaintiff

12  suggests).  (JS at 8.)  Thus, the results only were valid for two years (i.e., until July

13  16, 2004).  This test is the one relied on by the ALJ in his April 20, 2004, decision

14  after the first hearing held on March 30, 2004, and in his current decision where he

15  found that prior to age eighteen Plaintiff's impairments included "borderline

16  intellectual functioning" – Dr. Townsend's conclusion.[6]  Plaintiff's Performance

17  score of 65 falls within the severity range of 60 to 70.

18        On April 20, 2005, prior to the second hearing, when Plaintiff was eighteen

19  years old, he was again administered an IQ test, this time by Dr. Colonna who

20  reported a Verbal score of 90, a Performance score of 75, and a Full Scale score of

21

22        [4]  Under Listing 12.05, the requirement is modified slightly to require "an

23  additional and significant *work-related* limitation or function."

24        [5]  There was a third testing session for which the ALJ rejected the results and

25  conclusions, a finding which is not in dispute and which will not be considered

26  herein.

27        [6]  As will be discussed, he found Plaintiff, after age eighteen, had "low

28  average intellectual functioning" – the opinion of Dr. Colonna who administered a

    later IQ test.

1    81.  Based on these results, Dr. Colonna concluded, and the ALJ found, that

2    Plaintiff's intellectual functioning was in the "low average range."  (AR at 175.)

3         Plaintiff does not present after age eighteen with "a valid verbal,

4    performance, or full scale IQ of 60 through 70" and, therefore, does not meet the

5    requirements of either the first prong of the introductory paragraph of Listing 12.05

6    (subaverage general intellectual functioning) or the severity requirements of

7    Listing 12.05C, at least from the date of that test.  The Court declines to find that

8    the results of this later test apply prior to the date of testing, particularly since a test

9    valid through July 16, 2004 (one week prior to Plaintiff's eighteenth birthday), had

10   been done earlier.  Accordingly, substantial evidence supported the ALJ's finding

11   that, after age eighteen, Plaintiff did not meet or equal Listing 12.05 and did not

12   qualify as disabled.

13        Prior to age eighteen, however, with a valid Performance score of 65 (as

14   well as a valid Full Scale score of 70), Plaintiff's first test scores, valid for two

15   years after the testing date of July 16, 2002, fell squarely within the requisite

16   severity range of 60 to 70 and met the "subaverage intellectual functioning"

17   requirement of Listings 112.05 and 112.05D.  The Court disagrees with the

18   Commissioner that there must be a specific diagnosis of "mental retardation" in

19   order to satisfy the diagnostic description in the introductory paragraphs – the

20   Listings do not require such a diagnosis.  Indeed, the introductory paragraph to the

21   Listing merely defines mental retardation as subaverage general intellectual

22   functioning with deficits in adaptive functioning.  It then sets forth the level of

23   severity required for a finding of disability – i.e., a discrete score between 60 and

24   70 on any *one* of the three IQ scales (Verbal, Performance, or Full Scale) and a

25   physical or mental impairment imposing an additional and significant limitation of

26   function.  20 C.F.R. § 404, Subpart P, App. 1, Listings 12.05C, 112.05D.

27        In contrast, the Diagnostic and Statistical Manual of Mental Disorders

28   ("DSM-IV") defines the various levels of mental retardation based solely on the

7

mathematically derived Full-Scale score, in this case a 70, which is at the upper end of "Mild Mental Retardation" under the DSM-IV, i.e., "borderline" retardation as per Dr. Townsend.  <u>See</u> American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 42 (4th ed. 1994).  Perhaps significantly, however, the Court notes that, with respect to the Performance test results, Dr. Townsend also specifically noted that Plaintiff's score was "in the mildly retarded range."  (AR at 127.)

Moreover, additional evidence supports the validity of the subaverage score of 65 on the Performance scale.  For instance, Dr. Townsend specifically noted that Plaintiff's "problem solving approach was below average for his age."  (AR at 125.)  She also reported that i) he was low in doing mental arithmetic "which requires more focused concentration" (AR at 127); ii) his score on the Performance section "is in the mildly retarded range" (AR at 127); iii) he is "significantly below age level in doing Arithmetic" (<u>id.</u>); and iv) he has a perceptual motor dysfunction compared to other children his age and his low score on the Bender-Gestalt test is consistent with his low scores on the Performance section of the Weschler test (AR at 128).

Thus, the Court finds that the first prong of the introductory paragraph of Listing 112.05 requiring subaverage intellectual functioning, and the severity requirement in the first prong of Listing 112.05D, have been met.

## 2.   <u>Deficits in Adaptive Functioning</u>

The second prong of the introductory paragraph of Listing 112.05 is met if Plaintiff exhibited "deficits in adaptive functioning."  20 C.F.R. § 404, Subpart P, App. 1, Listing 112.05.  According to the <u>DSM-IV</u>, deficits in adaptive functioning exist when the claimant fails to meet the standards expected for his age in at least two of the following skill areas:  communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.  <u>DSM-IV</u>, <u>supra</u>, at 41, 42.

8

Because the introductory language of Listing 112.05 does not require the presence of "marked" deficits, merely that deficits be present, having a "less than marked" limitation does not preclude the finding that the impairments have met the "listing-level severity." 20 C.F.R. § 416.925(b)(ii) ("[W]hen we decide whether your impairment(s) meets the requirements of a listing, we will decide that your impairment is of 'listing-level severity' even if it does not result in marked limitations in two domains of functioning, or an extreme limitation in one, if the listing that we apply does not require such limitations to establish that an impairment(s) is disabling.").

With respect to deficits in these areas, the ALJ cited with approval the psychiatric and medical consultant opinions of Paul Balson, M.D. (AR at 131-39), and Robert Ferrell, M.D[7] (AR at 153-61). (AR at 22.) Although the ALJ reviewed these opinions with respect to whether the doctors found a functionally equal impairment (see AR at 22), the findings of these doctors also support that Plaintiff had the requisite deficits in adaptive functioning. In his July 31, 2002, report, Dr. Balson found that Plaintiff had "less than marked" limitations in attending and completing tasks, moving and manipulating objects, and health and physical well-being (AR at 131-36), and between a "less than marked" and "marked" limitation in acquiring and using information. (AR at 135.) In his November 22, 2002, report, Dr. Ferrell found that Plaintiff had "less than marked" limitations in acquiring and using information, attending and completing tasks, moving and manipulating objects, caring for himself, and health and physical well-being. Dr.

---

[7] The ALJ's only area of disagreement with these two opinions was the doctors' assessments that the claimant had "less than marked limitation in the domain of interacting and relating with others." (AR at 22.) Based on the ALJ's findings and the fact that in his original decision he found "no evidence of limitation in the claimant's ability to interact and relate to others" (AR at 197), the Court assumes that the ALJ believed Plaintiff had no limitation in this area prior to the age of eighteen.

1   Townsend noted that Plaintiff was "below average in adaptive skills and in social
2   relationships." (AR at 129.) Moreover, although Plaintiff had completed the
3   eleventh grade in regular, not special education, classes (AR at 62, 99, 125, 163),
4   he dropped out of school in 2004, after one month in the twelfth grade. (AR at
5   255.) In April 2002, Plaintiff's mathematics teacher stated that Plaintiff was "not
6   doing well in the class." (AR at 91). And, although that teacher also stated he felt
7   Plaintiff's lack of progress was "a matter of his not doing the work as opposed to
8   his not being able to do the work" (id.), that same teacher indicated serious
9   problems with Plaintiff's ability to attend to and complete tasks. (AR at 92.)
10  These comments and Plaintiff's dropping out of school, lend further support to a
11  finding of deficits in areas of adaptive functioning.

12       Substantial evidence supported the ALJ's finding that prior to age eighteen
13  Plaintiff had limitations in the domains of moving and manipulating objects, health
14  and physical well-being, acquiring and using information, and attending and
15  completing tasks. (AR at 21, 23.) Thus, Plaintiff met the standards of the second
16  prong of the introductory paragraph of Listing 112.05, with deficits in more than
17  two areas of adaptive functioning.

18       **3.    Physical or Mental Impairment Which Imposes an Additional and**
19  **Significant Limitation of Function**

20       The determinative issue then becomes whether Plaintiff suffered from a
21  physical or other mental impairment which imposed an "additional and significant
22  limitation of function," in satisfaction of the severity requirements of Listing
23  112.05D. The Ninth Circuit has held that the almost identical severity prong of
24  Listing 12.05C is met when the effect on the claimant's ability to perform basic
25  work-related activities is more than slight or minimal. Fanning v. Bowen, 827
26  F.2d 631, 633 (9th Cir. 1987). The court emphasized that a finding of severity is
27  not required to satisfy the "more than slight or minimal effect standard." Fanning,
28  827 F.2d at 633 n.3. The Court sees no reason not to apply this same general test

1  to the almost identical severity prong of section 112.05D, with respect to Plaintiff's

2  performance of basic activities.

3      Here, the ALJ expressly determined that Plaintiff's asthma, borderline

4  intellectual functioning, and learning disorder in mathematics prior to age eighteen,

5  were "'severe' within the meaning of 20 CFR § 416.924(c) and Social Security

6  Rulings 96-3p and 85-28 because the claimant *has more than slight abnormalities*

7  *and more than minimal functional limitations.*"  (AR at 18-19 (emphasis added).)

8  This express finding necessarily indicates that the second prong under the severity

9  requirement of Listing 112.05D has been met.  See Fanning, 827 F.2d at 633-34

10  (remanding for the ALJ to make an express finding as to whether the claimant's

11  additional impairments had more than a slight or minimal effect upon his ability to

12  perform basic work activities);  see also Cook v. Bowen, 797 F.2d 687, 690 (8th

13  Cir. 1986) (an impairment imposes significant limitations under 12.05C when its

14  effect on the ability to perform basic work is more than slight or minimal); Warren

15  v. Shalala, 29 F.3d 1287, 1291 (8th Cir. 1994) ("significant" involves something

16  less than "severe"), quoting Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515

17  (11th Cir. 1985) ("significant" requires something less than "severe" but "more

18  than slight or minimal").

## V.

## CONCLUSION

21      Based on the foregoing, the Court finds that, prior to age eighteen, Plaintiff

22  met the requirements for a finding of disability under Listing 112.05D due to

23  mental retardation, and the ALJ erred in finding that Plaintiff's impairments did

24  not medically equal a Listing.  After age eighteen, based on the later IQ test,

25  Plaintiff did not meet or equal the requirements of Listing 12.05C and, therefore,

26  that portion of the ALJ's decision is affirmed.

27      The law is well established that the decision whether to remand for further

28  proceedings or simply to award benefits is within the discretion of the Court.  See,

1  e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at

2  603; Lewin  v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is

3  warranted where additional administrative proceedings could remedy defects in the

4  decision.  Lewin, 654 F.2d at 635.  Remand for the payment of benefits is

5  appropriate where no useful purpose would be served by further administrative

6  proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the

7  record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th

8  Cir. 1986); or where remand would unnecessarily delay the receipt of benefits,

9  Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

10       Here, the Court has found that the ALJ improperly applied the legal standard

11  for whether Plaintiff medically met the requirements for a Listing prior to the age

12  of eighteen.  It is clear from the record that the ALJ would be required to find that

13  Plaintiff was disabled if the proper legal standard was applied under Listing

14  112.05D.  Accordingly, it appears to the Court that this is a case where no useful

15  purpose would be served by further administrative proceedings, where the record

16  has been fully developed, and where remand would only unnecessarily delay the

17  receipt of benefits.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28                                **VI.**

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security with respect to the ALJ's finding of not disabled prior to Plaintiff attaining the age of eighteen, and remanding this matter for the payment of SSI benefits for the time period of March 28, 2002, the date Plaintiff filed his Child's SSI claim, to July 23, 2004, the date Plaintiff attained the age of eighteen.  The Court affirms the decision of the Commissioner of Social Security with respect to the findings of the ALJ after Plaintiff attained the age of eighteen on July 23, 2004.


DATED:  August 1, 2007

HONORABLE OSWALD PARADA
United States Magistrate Judge

13